Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 7367 | **DATE** | 10/28/2004 |
| **CASE TITLE** | Jalaja Piska, et al vs. General Motors Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Defendant's Motion for Leave to File a Counterclaim Against Plaintiffs Jalaja Piska and Venu Piska and Third-Party Complaint Against Laximinarayana Piska [15] is denied. Status hearing date of 11/3/04 at 9:30a.m. to stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 2 8 2004 date docketed | |
| ✓ | Docketing to mail notices. | | 28 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JALAJA PISKA individually and as mother and )
next friend of Rohan Piska, a minor; ROHAN )
PISKA, a minor and next friend of Jalaja Piska; )
and VENU PISKA )
                     Plaintiffs, )
                                  )    Case No. 02 C 7367
v.                              )
                                  )    Judge Mark Filip
GENERAL MOTORS CORPORATION )
a Delaware corporation, )
                     Defendant. )

DOCKETED
OCT 28 2004

## MEMORANDUM OPINION AND ORDER

Plaintiffs Venu Piska, Jalaja Piska, and their son, Rohan Piska ("Plaintiffs" or "Piskas"), are suing Defendant General Motors Corporation ("Defendant" or "GM"). Plaintiffs variously allege products liability claims and loss of consortium claims relating to a car accident that involved a GM automobile. This case is before the Court on Defendant's Motion for Leave to File a Counterclaim Against Plaintiffs Jalaja Piska and Venu Piska and Third-Party Complaint Against Laximinarayana Piska ("Motion"). (D.E. 15.)[1] As explained below, Defendant's Motion is denied.

## BACKGROUND FACTS

The underlying cause of action stems from events that took place on July 23, 2000, when the Plaintiffs' 2000 Pontiac Montana, driven by Laximinarayana Piska, was in a single-car

---

[1] The various docket entries in this case are cited as "D.E. ___."

rollover accident while traveling on Interstate 80/90, near South Bend, Indiana. (D.E. 15, Attachment 1, ¶¶ 5, 9.) Plaintiffs were present in the automobile at the time of the accident, and they aver that they suffered various injuries and compensable damages as a result of the accident. (*Id.* ¶ 6.) On July 23, 2002, Plaintiffs filed the original complaint against GM, alleging that a design defect in the 2000 Pontiac Montana van caused Plaintiffs' injuries and damages. (*Id.* ¶ 7.) Defendant was served with a "Summons and Complaint" in this action on August 6, 2002. (D.E. 19 at n. 1 (citing Defendant's Motion).)

On September 5, 2002, GM filed its answer to the complaint, denying all allegations of defects. (D.E. 15, Attachment 1, ¶ 8.) On July 30, 2004, GM filed a motion for leave to file a third-party complaint against Laximinarayana Piska and a counterclaim against Jalaja Piska and Venu Piska. Relevant to this opinion, the counterclaim alleged that the Piskas are contributorily negligent under a theory of negligent entrustment. (*Id.* ¶ 11.) Specifically, GM alleges that Laximinarayana Piska was an inexperienced driver (in the United States, on interstate roads generally, and of mini vans), that Jalaja and Venu Piska knew Laximinarayana Piska was an inexperienced driver, and that Jalaja and Venu Piska "knew or should have known that Laximinarayana Piska's inexperience made it dangerous and unsafe for him to operate the 2000 Pontiac Montana mini van on interstate roads." (*Id.* ¶¶ 11-12.) GM alleges that the Piskas' negligent entrustment of the Pontiac Montana to Laximinarayana Piska was a proximate cause of the accident and any resulting injuries. (*Id.* ¶ 13.) Consequently, GM asserts that if Plaintiff Rohan Piska obtains a judgment against GM, then GM is entitled to contribution from Jalaja Piska and Venu Piska "in an amount commensurate with their relative culpability which was a proximate cause of Rohan Piska's injuries and damages." (*Id.* ¶ 14.) This putative counterclaim

seeks to invoke the Illinois Joint Tort-Feasor Contribution Act, 740 ILCS § 100/1 *et seq*. (*Id.* ¶ 4.) GM further asserts that Laximinarayana Piska, the putative third-party defendant is also, like Jalaja and Venu Piska, liable to GM under the Illinois Joint Tort-Feasor Contribution Act. (D.E. 15, Attachment 2, ¶ 5.) In the putative third-party complaint, GM alleges that if a judgment is returned against it "and in favor of the Plaintiffs, then General Motions is entitled to a judgment against the Third-Party Defendant, Lax[i]minarayana Piska, in an amount commensurate with his pro rata share of culpability which contributed to cause Plaintiffs' injuries and damages." (*Id.*, ¶ 15.) The Piskas responded, arguing that the Motion should be denied due to GM's alleged procedural violations and as a function of Indiana substantive law, which they assert controls this issue, or alternatively, under Illinois substantive law. (D.E. 19 at 2-5.)

DISCUSSION

In the Motion, GM argues that the Plaintiffs negligently entrusted their automobile to an inexperienced driver and that this entrustment was a proximate cause of the accident and alleged injuries suffered by Rohan Piska. (D.E. 15, Attachment 1, ¶¶ 11, 13.) As a result, GM states that if a judgment is entered against GM, the amount should be offset by Plaintiffs' pro rata share of the liability due to Plaintiffs' negligence. (*Id.* ¶ 14.) To support its argument, GM relies on Illinois law. Before discussing how Illinois law supports their claim, however, GM argues that under both Indiana and Illinois choice-of-law rules, Illinois law is the appropriate substantive law to apply. (D.E. 21 at 4-5.) GM then maintains that Illinois law gives it a valid claim for contribution, citing several Illinois state court cases. (*Id.* at 5-6.) Significantly, GM makes no assertion that it would have a valid claim under Indiana law for either the proposed counterclaim or third-party claim. GM further asserts that its Motion satisfies all procedural requirements.

3

First, it cites federal law providing that leave to amend complaints should be "freely given." (*Id.* at 1.) Furthermore, GM alleges that the factual circumstances of the case demonstrate that its Motion was filed in a timely manner, inside of the statute of limitations. (*Id.* at 2-3.)

Plaintiffs, on the other hand, maintain that GM's Motion has a number of procedural and substantive problems. First, they claim that Defendant's Motion should not be granted because it has been commenced after the statute of limitations has run (D.E. 19 at 3), since the proposed counterclaim and third-party claim have not been accepted for filing, even though they were filed with the Court shortly before the statute would run. (*Id.* at 2-3.) Substantively, Plaintiffs contend that under Indiana law GM may not seek contribution, since Indiana law generally does not permit contribution. (*Id.* at 3.) Alternatively, Plaintiffs assert that Illinois case law precludes GM's counterclaim and third-party claim from being successful in any event. (*Id.* at 4-5.)

I.  Time to Amend

Plaintiffs initially allege that GM's Motion seeks to advance claims that are time-barred, since the claims were filed more than twenty days after GM filed its answer, thereby requiring GM to file a motion and seek leave of the court. (D.E.19 at 2.) Furthermore, according to Plaintiffs, Defendant "did not obtain such leave of court prior to the expiration of the two-year limitation period in 735 ILCS 5/13-204(b)." (*Id.*) Since more than two years have elapsed since the service of process on GM, and since its proposed contribution actions have "not been accepted for filing," the Plaintiffs claim that GM's contribution actions are now time-barred. (*Id.* at 2-3.) This argument is unconvincing.

Federal Rule 15(a) provides that "leave shall be freely given [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a). In other words, "[i]f the underlying facts or

4

circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Peoples v. Sebring Capital Corp.*, 209 F.R.D. 428, 429 (N.D. Ill. 2002). However, there are limitations on the ability to amend a complaint. A district court "may deny leave to amend for undue delay, bad faith, dilatory motive, prejudice, or futility." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Plaintiffs initially allege futility on grounds that the proposed contribution actions are time-barred. As explained below, this contention appears meritless.

Under Illinois law, "[i]n instances where an underlying action has been filed by a claimant, no action for contribution . . . may be commenced more than 2 years after the party seeking contribution or indemnity has been served with process in the underlying action." 735 ILCS 5/13-204(b) (2004). Both parties agree that GM was served with process on August 6, 2002. (D.E. 19 at n. 1, D.E. 21 at 3.) Therefore, the two-year statute of limitations for GM to file and the counterclaim and third-party action, all seeking contribution, expired on August 6, 2004. The Court notes that GM sought leave to file its counterclaim via the Motion on July 30, 2004. (D.E. 15.) Attached to its Motion, and also filed on July 30, 2004, were the counterclaim and third-party claim themselves. Since all of the documents were filed on or before August 6, 2004, this Court will treat both the Motion and the putative contribution claims as having been filed in a timely manner and not in violation of the two-year limitation period.[2]

---

[2] Plaintiffs cite no authority whatsoever for the proposition that the statute of limitations expires if a party has timely filed a motion with a court seeking leave to advance certain claims, along with a proposed amended complaint, but that motion is in the process of being briefed at the time the limitations period "expires." Such a result seems impractical and unfair, given that a litigant in such circumstances will often be subject to the vicissitudes of a briefing schedule and

II.     Substantive Analysis: Choice-of-Law

When attempting to resolve a choice-of-law dispute, the Court must first determine whether a conflict exists between the laws of the states that the parties assert should be employed. As applied to the instant case, Indiana and Illinois law differ in their treatment of parties seeking contribution from alleged fellow tortfeasors. In Indiana, the law "generally does not permit contribution or indemnity among joint tort feasors unless they have either implicitly or expressly contracted for it." *Avery by Avery v. Mapco Gas Prods.*, 18 F.3d 448, 455-56 (7th Cir. 1994) (collecting cases); *see also Elcona Homes Corp. v. McMillan Bloedell, Ltd.*, 475 N.E.2d 713, 715 (Ind. App. 1985). Therefore, a right of indemnification generally arises in Indiana only by contract, express or implied, and in the absence of such contract, the right does not exist.[3] *See Elcona Homes Corp.*, 475 N.E.2d at 715. In Illinois, however, "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property . . . there is a right of

---

disposition of the motion will depend on other matters before the court. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 & n.2 (7th Cir. 2004) (holding that the district court abused its discretion in denying appellant's motion for leave to amend where the statute of limitations had not yet run at the time the appellants moved for leave to amend their complaint). The same result appears to adhere under Illinois law. For example, in *Fischer v. Senior Living Properties, L.L.C.*, 771 N.E.2d 505 (Ill. App. Ct. 2002), the last day to file an action was December 29, 2000. On December 27, 2000, plaintiff's attorney filed a motion for leave to file an amended complaint *instanter* and a proposed order granting leave to file the amended complaint. By December 29, however, the judge had not signed the motion. *Fischer*, 771 N.E.2d at 511. The majority held that "the filing of an amended complaint where the judge has not signed the order granting leave" did not ground a successful statute of limitations defense. Although a dissent differed as to result on the specific facts presented, even the dissenting judge agreed that he would deem the statute of limitation tolled where, as here, before the expiration of the limitations period, the litigant "(1) obtained a hearing date for the motion to amend, even if that date was beyond the expiration of the limitations period; (2) filed his motion to amend accompanied by a copy of the proposed amended complaint . . ." *Id.* at 515.

[3] Two exceptions to the general rule exist and are discussed *infra*. Neither exception applies to this case.

contribution among them." 740 Ill. Comp. Stat. 100/2(a) (2004); *compare, e.g., Summar v. Indiana Harbor Belt Railroad Co.*, 515 N.E.2d 130, 133 (Ill. App. Ct. 1987) (refusing to impose the Illinois contribution statute on the parties because the court applied Indiana law, and "contribution is not adopted in that state"). Since there is a real conflict between the contribution laws of Indiana and Illinois, the Court must continue to engage in the choice-of-law analysis.

When a federal district court sitting in diversity has to decide which state's substantive law to apply, it applies the forum state's choice-of-law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Ryan Beck & Co., Inc. v. Campbell*, Case No. 02 C 7016, 2003 U.S. Dist. LEXIS 12559, at *3 (N.D. Ill. July 17, 2003). Thus, this Court will apply Illinois choice-of-law principles. Illinois uses the "most significant relationship test" from the Restatement (Second) to resolve choice-of-law issues in tort cases. *See Suzik v. Sea-Land Corp.*, 89 F.3d 345, 348 (7th Cir. 1996). In analyzing the choice-of-law issues, the Seventh Circuit has adopted the concept of depecage: "the process of applying rules of different states on the basis of the precise issue involved." *In re Air Crash Disaster Near Chicago, Illinois on October 21, 1994*, 644 F.2d 594, 610-11 (7th Cir. 1980); *see also Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 848 (7th Cir. 1999); *Schoeberle v. United States*, No. 99-C-352, 2001 WL 292984, at *2 (N.D. Ill. Mar. 26, 2001) (stating that "the Seventh Circuit has adopted the concept of depecage"). Therefore, this opinion focuses on the purpose of and policies behind the decision to allow or disallow GM's claim for contribution.

Under the most significant relationship test, the Restatement (Second) lists factors relevant to the choice of the applicable rule of law:

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,

7

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issues,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

*Restatement (Second) of Conflict of Laws* §6 (1971). In applying the principles of Section 6 to determine the state with the most significant relationship when considering an issue in tort, the Court is guided by Restatement (Second) of Conflicts of Law §145(2), which sets out multiple contacts that a court should analyze to determine which state has the most significant relationship with the litigation. *Restatement (Second) of Conflict of Laws* §145 cmt. e (1971). These contacts include (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Restatement (Second) of Conflict of Laws* §145(2); *accord Ness v. Ford Motor Co.* No. 89 C 689, 1993 U.S. Dist. LEXIS 9938, at * 2-*3 (N.D. Ill. July 20, 1993) (identifying Restatement factors). The most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred. *See Miller v. Long-Airdox Co.*, 914 F.2d 976, 977-78 (7th Cir. 1990) (collecting cases); *Ness*, 1993 U.S. Dist. LEXIS 9938, at *3.

The Restatement (Second) of Conflict of Laws teaches that "[i]n the case of personal injuries . . . the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law." *Id.*, § 145 cmt e. The Restatement further teaches that "[w]hen the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law with respect to most issues involving the tort." *Restatement*

8

*(Second) of Conflict of Laws* §145 cmt. e. "Illinois law presumes that the law of the state where the injury occurred will govern 'unless another state has a more significant relationship to the occurrence or to the parties involved.'" *Miller*, 914 F.2d at 978 (quoting *Ferguson v. Kasbohm*, 475 N.E.2d 984, 986 (Ill. App. Ct. 1985)); *see also Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999) (collecting cases and stating, "in the absence of unusual circumstances, the highest scorer on the 'most significant relationship' test is—the place where the tort occurred"); *Ness*, 1993 U.S. Dist. LEXIS 9938, at *3.

After reviewing the many factors identified as potentially relevant in the Restatement, and reviewing the parties' arguments, nothing in the instant case overcomes the general presumption in favor of applying the law of the state in which the alleged tortious harm occurred—i.e., Indiana. Under the facts at bar, this Court finds no reason to supplant the presumptive importance given to the place of injury, in this case Indiana, in deciding the choice of law to be applied. There is nothing in the record, nor in the motions submitted by either party, to suggest that Illinois has a more significant relationship to the occurrence than does Indiana.[4] The injury occurred in Indiana, and the conduct which caused the injury occurred in Indiana—including the alleged acts of the Piskas centrally implicated by GM's proposed claims.[5] While the Plaintiffs

---

[4] Neither GM nor the Plaintiffs has undertaken any meaningful review of the various Restatement factors. As a result, the Court has attempted to review the factors in light of the more generalized arguments in the briefing and upon a review of the record in the case.

[5] The potential conduct at issue giving rise to the injury, at least as GM has framed its contribution arguments, could be understood as either the driving of the automobile or, more precisely, the Plaintiffs entrusting the car to Laximinarayana Piska and his conduct on the highway outside of South Bend, Indiana. There is no indication in the record as to where the Plaintiffs handed the car keys to Laximinarayana Piska. Arguably, this may not even matter, since the Plaintiffs continued riding in the car driven by Laximinarayana Piska under their own volition. Hence, the Court views the conduct at issue, entrusting the car to Laximinarayana

9

are domiciled in Illinois, "this single factor is not sufficient to overcome the presumption that the local law of the State in which the injury occurred governs this action." *Ferguson*, 475 N.E.2d at 987.

*Ness v. Ford Motor Co.*, No. 89 C 689, 1993 U.S. Dist. LEXIS 9938 (N.D. Ill. 1993), addressed a similar series of circumstances. In *Ness*, the car in which the passenger, an Illinois resident, was riding crashed in Iowa. The passenger claimed Illinois law applied, but the manufacturer, a Michigan company, raised several defenses, including contributory negligence, based on Iowa statutes. The court in *Ness* ruled, in relevant part, that Iowa law should apply. Specifically, the court noted that "Ness is correct that Iowa has no particular interest in an Illinois resident's product-liability claim against a Michigan manufacturer. But Illinois law has not taken the position that an Illinois court must apply Illinois law every time one party to a tort suit is an Illinois resident." *Ness*, 1993 U.S. Dist. LEXIS at *4. In *Ness*, as in the instant case, the Plaintiffs were Illinois residents, but the Defendant, while selling cars in all the states, had no particular relationship with Illinois. *See id.* at *9. Consequently, Illinois had no special interest in the outcome of the case. *See id.* As *Ness* explained:

> Ford has no particular relationship with Illinois; while Ford sells millions of dollars worth of automobiles in Illinois, [it] does [so] in other states. Nor does Illinois have any particular relationship to the occurrence. The fact that the car was headed toward Illinois

---

Piska, as being continuous up until the point at which the accident occurred. GM also makes clear that it views the heart of Laxminarayana Piska's alleged tortious conduct to have taken place in Indiana. (*See, e.g.*, D.E. 15, Attachment 2, ¶ 13 (GM asserting that "[n]otwithstanding his duty to use reasonable care . . . the [putative] Third-Party Defendant, Laxminarayana Piska, was guilty of negligence in that while operating the subject vehicle on Interstate 80/70, he drifted off the roadway onto the shoulder and over-corrected the steering wheel which caused a loss of control and the vehicle to roll-over.").) Consequently, the Court recognizes Indiana as the place where the alleged tortious conduct of the Piskas, as identified and placed at issue by GM, occurred.

10

when it rolled over is at least as fortuitous as the fact that it rolled over in Iowa. The laws of physics act upon a car without regard to where the trip began or where it was intended to end. To the extent that the negligence of the driver may become an issue, Iowa has an interest in the conduct of a driver on its roads; Illinois has none.

*Id.* at *8-9.

*Ness* also specifically distinguished cases where both parties to a lawsuit were Illinois residents. In those cases, Illinois law would apply. *See id.* at *8.[6] But the instant case, like *Ness*, does not involve two parties who are Illinois residents. Moreover, while it may have been fortuitous that the accident happened in Indiana, it was not fortuitous that the Piskas were in Indiana. They traveled there voluntarily, and while on Indiana roads the Piskas purposefully availed themselves of the benefits and restrictions of Indiana laws. *See id.* at *9 (arguing that Iowa had an interest in the conduct of a driver on its roads such that a de facto relationship was created). Thus, in *Ness*, in similar circumstances, the court ruled that Illinois law did not apply. *Id.* at *8-9. That rule, in this case, means that Plaintiffs prevail. *Accord Restatement (Second) of Conflict of Laws* §145, cmt. (f) ("The relative importance of the contacts mentioned above varies somewhat with the nature of the tort involved. This, the place of injury is of particular

---

[6] GM seeks to rely on one such case, *Kwasniewski v. Schaid*, 607 N.E.2d 214 (Ill. 1992). *Kwasniewski*, unlike this case, involved "a lawsuit between parties who are both residents and domicilaries of Illinois." *Id.* at 217. As such, *Kwasniewski* involved a materially different scenario, as *Ness* explained. Defendant also briefly references *Simon v. United States*, 805 N.E.2d 798 (Ind. 2004), in which the Indiana Supreme Court applied Indiana choice-of-law principles (not Illinois choice-of-law principles) and concluded that Indiana law should be applied concerning an airplane accident that occurred in Kentucky. *Id.* at 806. In doing so, the Indiana Supreme Court stated that the situation in the *Simon* case was atypical. *See id.* ("This is one of the rare cases in which the place of the tort insignificant."). *Simon* also expressly distinguished the facts of that case (involving an air crash) from automobile incidents such as the one involved in the instant case. *See id.* ("[U]nlike in cases involving an automobile accident, the laws of the state where the crash occurred did not govern the conduct of the parties at the time of the accident."). Thus, to the extent Indiana choice-of-law teaching has relevance to this case at all, *Simon* does not direct a different result.

importance in the case of personal injuries and injuries to tangible things.").

Finally, the last contact in Section 145, the place where the relationship between the parties is centered, is also unhelpful for GM. The relationship between the Plaintiff and Defendant is, at best, second-hand and impersonal. Product liability arises "out of the most casual 'relationship' imaginable, the One-time purchase and sale of the product." *See id.* at *9. Furthermore, there is no way for this court to determine where the relationship was centered. The briefs provide no guidance as to where the Plaintiffs acquired their GM automobile, thus consummating the relationship between the parties. Therefore, Indiana law governs GM's putative joint-tortfeasor claims against the Piskas.

In attempting to discern the affect of Indiana law on the instant case, the Court has received no meaningful argument from GM regarding Indiana substantive law. GM's brief either did not envision that a choice-of-law analysis would require applying Indiana law or, more likely, recognized that applying Indiana law would sound the death knell for GM's potential claims. Indiana law "generally does not permit contribution or indemnity among joint tort feasors unless they have specifically contracted for it." *Avery*, 18 F.3d at 455; *see also* Ind. Code. Ann. §34-51-2-12 (2004). Since there is no allegation of an express agreement, only one of the specific exceptions to this rule could save GM's counterclaim. One exception is for instances of derivative liability. *See McClish v. Niagara Machine & Tool Works*, 266 F. Supp. 987, 989 (S.D. Ind. 1967); *see also Avery v. Mapco Gas Prods.*, 848 F. Supp. 1388, 1396 (N.D. Ind. 1991). Another is for a party who is "constructively liable to a third person by operation of some special statute or rule of law which imposes upon him a non-delegable duty, but who is otherwise without fault, is entitled to indemnity from one who directly causes the harm." *McClish*, 266

F.Supp. at 990. No party argues that either of these exceptions applies to this case, and neither exception appears applicable to the Court upon its own review of the allegations. Consequently, GM's proposed claims fall into Indiana's general category of prohibiting contribution actions. Therefore, by application of Indiana law, the Defendant's Motion proposing to add various contribution claims against the Piskas, sought to be advanced under the Illinois Joint Tort-Feasors Contribution Act, is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is DENIED.

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Dated: 10-28-04